**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ADAN ORTIZ,**<br>　　Plaintiff**,**<br>　　vs.<br>**VOLT MANAGEMENT CORP, ET AL.,**<br>　　Defendants**.** | CASE NO. 16-cv-07096-YGR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br>Re: Dkt. No. 22 |

　　Plaintiff brings this putative class action against defendants Volt Management Corp. ("Volt") and Genco I, Inc. ("Genco") for alleged violations of California's wage and labor laws. (Dkt. No. 1 ("Compl.").) Plaintiff brings the following five causes of action against defendants: (i) failure to pay hourly wages pursuant to Labor Code sections 223, 510, 1194, 1194.2, 1197, 1197.1, and 1198; (ii) failure to provide accurate written wage statements pursuant to Labor Code section 226(a); (iii) failure to pay all final wages timely pursuant to Labor Code sections 201 through 203; (iv) violation of California's Unfair Competition Law, Business & Professions Code sections 17200, *et seq.*; and (v) violation of the federal Fair Labor Standards Act, 29 U.S.C. sections 201, *et seq.* Plaintiff's allegations are asserted jointly against defendants without any differentiation.

　　Now before the Court is defendant Volt's motion to compel plaintiff into arbitration and dismiss plaintiff's claims or, in the alternative, stay the entire case during the pendency of any arbitration proceedings. Subsequent to briefing on Volt's motion, defendant Genco filed a joinder, seeking that plaintiff's claims against it also be compelled to arbitration. Plaintiff opposes both motions. Having carefully reviewed the pleadings and the papers and exhibits submitted, and for the reasons set forth more fully below, the Court **ORDERS** as follows: The Court **GRANTS** Volt's

motion to compel arbitration and hereby **COMPELS** plaintiff to arbitrate his claims against Volt. The Court reserves ruling on other issues pending further submission from the parties, as outlined herein.[1]

## I. RELEVANT FACTUAL BACKGROUND

Plaintiff brings this claim against defendants for alleged wage and labor law violations in connection with plaintiff's employment with defendant Volt. (*Id.* at ¶ 1.) Defendant Genco provides defendant Volt with logistics support for its operations. (*Id.* at ¶ 8.) Generally, plaintiff alleges that defendants failed to provide all necessary compensation related to shift differentials, non-discretionary bonuses, premium wages for meal and rest periods, overtime wages, time spent clocking in and clocking out, and final wages following separation from employment. (*Id.* at ¶ 1.) Additionally, plaintiff alleges that defendants failed to provide accurate written wage statements. (*Id.*)

Relevant to the instant motion, plaintiff signed a one-page "Employment Agreement" with defendant Volt on March 27, 2014, which contained the following arbitration provision:

> **8. AGREEMENT TO ARBITRATE DISPUTES:** Any employment and/or employment termination related disputes and/or disputes arising out of or relating to the actions of the Company (or Company's employees) and/or disputes arising out of or related to any assignment and/or termination of any assignment and/or arising out of or relating to the actions of the Client (or Client's employees), shall be settled by final and binding arbitration, pursuant to the Federal Arbitration Act, in accordance with the employment rules of the American Arbitration Association ("AAA"), which can be found at www.adr.org or a copy of the AAA rules can be provided to Employee upon Employee's request to the Company at the time of hire. The arbitrator may award any and all remedies in accordance with the laws of the state where Employee was last employed with the Company. The award shall be in writing, signed by the arbitrator, and shall provide the reasons for the award. Judgment upon the arbitrator's award may be entered in any court having jurisdiction. The Company and Employee hereby waive our respective rights to trial by jury of any cause of action or defense that each may have against the other or against any Client. This agreement to arbitrate disputes does not prevent

---

[1] In connection with its motion, Volt filed a Request for Judicial Notice ("RJN") of "The Employment Arbitration Rules and Mediation Procedures" of the American Arbitration Association. (Dkt. No. 23, RJN Ex. A.) Volt proffers that such document is subject to judicial notice as a "fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* Plaintiff does not oppose. The Court finds that such document is properly subject to judicial notice and hereby **GRANTS** Volt's request.

2

> Employee from filing a charge or claim with any governmental administrative agency as permitted by applicable law.

(Dkt. No.22-1 at 5, Employment Agreement ¶ 8.) Additionally, the AAA rules provide thus: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope[,] or validity of the arbitration agreement." (RJN Ex. A at 17.)

## II. LEGAL FRAMEWORK

The Federal Arbitration Act (the "FAA") requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. A party may bring a motion in the district court to compel arbitration. 9 U.S.C. § 4. In ruling on the motion, the court's role is typically limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F. 3d 1010, 1012 (9th Cir. 2004).

"Both the arbitrability of the merits of a dispute and the question of who has the primary power to decide arbitrability depend on the agreement of the parties." *Goldman, Sachs & Co v. Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Oracle Am. Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). An arbitrator, rather than the courts, decides these questions where "the parties clearly and unmistakably" express that intention. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). An arbitration clause including an agreement to follow a particular set of arbitration may constitute such an expression where those rules provide for the arbitrator to decide questions of arbitrability. *See Poponin v. Virtual Pro, Inc.*, No. 06-CV-4019-PJH, 2006 WL 2691418, at *9 (N.D. Cal. Sept. 20, 2006) (finding the ICC Rules of Arbitration clearly "provide for the arbitrator to decide arbitrability").

3

Non-signatories to an arbitration agreement may, at times, be able to compel signatories into arbitration in situations where state contract law would allow such litigant to do so. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009); *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1130 n.5 (9th Cir. 2013) (explaining that *Andersen* clarified that a "litigant who is not party to an arbitration agreement may invoke arbitration if the relevant state contract law allows the litigant to enforce the agreement") (citing *Andersen*, 556 U.S. at 632).

### III. VOLT'S MOTION TO COMPEL ARBITRATION

Volt moves the Court to compel plaintiff into arbitration, pursuant to the arbitration provision in their Employment Agreement. No dispute exists that the agreement at issue includes an arbitration provision. Additionally, the arbitration provision here incorporates the AAA rules, which delegate issues of arbitrability to the arbitrator. (Dkt. No. 22-1 at 5; RJN Ex. A at 17 ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope[,] or validity of the arbitration agreement."). The Ninth Circuit has found that the incorporation of such rules constitutes a clear delegation of authority to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015) (holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"). Accordingly, the Court need only address whether such delegation in the arbitration provision is valid and enforceable. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (holding that where arbitrability has been delegated to the arbitrator, courts must enforce the agreements "in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability"); *see also Brennan*, 796 F.3d at 1132 ("Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement *to delegate* arbitrability—the Delegation Provision—is itself unconscionable." (emphasis in original)).[2]

---

[2] Plaintiff asks the Court either to find that arbitration should only be allowed on a classwide basis or deny the motion on the basis that the Ninth Circuit has held that class action waivers without opt-out rights are unenforceable, citing *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016). In *Morris*, the Ninth Circuit held that a provision in the employment contract

4

Here, plaintiff argues that the arbitration agreement is unconscionable and therefore unenforceable.[3] "[U]nconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Mohamed*, 848 F.3d at 1210 (citations and internal quotations omitted). "Both substantive and procedural unconscionability must be present in order for a court to find a contract unconscionable, but 'they need not be present in the same degree.'" *Id.* (citations omitted). "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation omitted), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011). The Court addresses each prong before evaluating the provision as a whole.

### A. Procedural Unconscionability

With respect to the first prong of procedural unconscionability, plaintiff asserts the contract is adhesive because it was a condition of employment.[4] "It is well settled that adhesion contracts

---

requiring "separate proceedings" violated the plaintiff's rights to concerted work-related legal claims under the National Labor Relations Act. *Id.* at 990 (explaining that the contract was "structured so as to exclude all concerted employee legal claims"). The Ninth Circuit did not hold, however, that all arbitrations in the employment context *must* be on a classwide basis, regardless of the nature of plaintiff's claims and circumstances. The parties do not contend that the contract at issue forecloses the possibility of concerted work-related legal claims. Thus, because the parties delegated arbitrability to the arbitrator, the determination of whether plaintiff's claims here should proceed on a classwide basis in arbitration is an issue reserved for the arbitrator.

[3] The Ninth Circuit has held that, where the parties have delegated arbitrability to the arbitrator, a plaintiff may only challenge as unconscionable the delegation provision because questions regarding the unconscionability of the arbitration provision as a whole are reserved for the arbitrator. *See Brennan*, 796 F.3d at 1132; *see also Mohamed*, 848 F.3d at 1210. Plaintiff does not identify whether his arguments relate to the arbitration provision as a whole or are targeted specifically at the delegation provision. Thus, for purposes of this motion, the Court refers to both.

[4] Plaintiff also argues that the provision is procedurally unconscionable because defendants did not provide the rules governing arbitration. However, as Volt argues, the agreement specified that the arbitration rules could be located at "www.adr.org" and that a copy of the same could be provided to the employee upon request. (Dkt. No. 22-1 at 5.) Thus, the Court does not find this argument persuasive. *See Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) (finding that failure to attach the AAA rules is insufficient to support a finding of procedural unconscionability).

in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." *Peng*, 219 Cal. App. 4th at 551 (citations omitted); *see also Armendariz*, 24 Cal. 4th at 115 (explaining that "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement"). However, such adhesive aspects are not dispositive and courts have observed that when "there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Peng*, 219 Cal. App. 4th at 551 (citations omitted).

Here, plaintiff offers no further argument with regard to the adhesive nature of the delegation provision specifically, or the contract generally, nor does he raise any suggestion of "oppression" or "surprise" as to the same. Thus, while the Court acknowledges that some measure of procedural unconscionability exists as a result of the adhesive nature of the employment contract, the degree of such procedural unconscionability is low.

**B.  Substantive Unconscionability**

With respect to the second prong, i.e. analyzing whether the agreement is substantively unconscionable, plaintiff raises three arguments: (i) the provision gives Volt the unilateral right to modify the agreement; (ii) the arbitration policy allows Volt to recover attorney's fees if it is the prevailing party; and (iii) ambiguity exists as to which rules apply.[5]

Unilateral rights can result in findings of unconscionability depending on the specific circumstances. Here, plaintiff's argument with respect to Volt's right to modify stems from the following language: "Volt has the right to change, interpret or cancel any of its rules, policies,

---

[5] Plaintiff also argues that the arbitration provision here purports to protect criminal conduct if enforced in the context of Labor Code violations. Specifically, plaintiff urges that if the Labor Code disputes are sent to arbitration, Volt would effectively be insulating itself from facing the full consequences of criminalized behavior. Not so. Plaintiff does not, and cannot, levy criminal charges against Volt. If Volt's actions here rise to the level of criminal activity, the arbitration provisions would not shield Volt from prosecution by the appropriate state or federal authorities.

6

benefits, procedures or practices at Volt's discretion, upon reasonable notice where practicable." (Dkt. No. 22-1 at 7.) Importantly, the relied-upon language is not contained in the Employment Agreement but rather in the Volt Employee Guide. Thus, the arbitration provision itself cannot be interpreted to contain a provision allowing Volt to amend, modify, or abrogate any of plaintiff's rights unilaterally. Similarly, plaintiff's argument with respect to the right of the arbitrator to award attorney's fees is also contained in the Volt Employee Handbook and not in the actual arbitration provision or Employment Agreement. Even that language merely provides: "The arbitrator may be entitled to award reasonable attorneys' fees and costs to the prevailing party, in accordance with the law." (Dkt. No. 22-1 at 8.) The arbitrator's discretion with regard to attorney's fees is bounded by what otherwise would be allowed under the applicable laws, and does not grant an advantage to Volt alone. Neither provision renders the arbitration clause or the delegation of authority to the arbitrator substantively unconscionable.

With respect to the final argument regarding ambiguity, plaintiff compares the language in the Employment Agreement which requires the arbitration to be conducted "in accordance with the *employment* rules of the [AAA]" (*id.* at 5 (emphasis supplied)) with the "Arbitration Policy" included in the employee handbook which provides that the arbitration be conducted in accordance with "the *applicable* rules of the [AAA]" (*id.* at 8 (emphasis supplied)). The noted distinction does not create a meaningful ambiguity, let alone support a finding of substantive unconscionability. To the extent that AAA has "employment rules," those would be the "applicable rules."

In light of the foregoing discussion, the Court finds that, although plaintiff has raised a slight inference of procedural unconscionability, plaintiff has not made any showing of substantive unconscionability with regard to the arbitration provision generally or the delegation clause specifically. Accordingly, the Court finds that the arbitration provision is enforceable and hereby **COMPELS** plaintiff into arbitration with defendant Volt.

### IV. GENCO'S MOTION TO JOIN VOLT'S MOTION

Defendant Genco filed a joinder to Volt's motion arguing that plaintiff's claims against it should also be compelled into arbitration. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1231 (9th Cir.

2013) (finding that non-signatories may be able to compel signatories for "claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants"). Plaintiff opposes Genco's joinder requesting an opportunity to file an opposition to the same.

"The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Id.* at 1229. The Ninth Circuit in *Murphy* discussed several theories under which California law permits non-signatories to compel signatories into arbitration, including situations in which plaintiff's claims against the non-signatory are essentially the same and inseparable from arbitrable claims against signatory defendants. Here, plaintiff's complaint makes no attempt to distinguish between actions performed by Volt versus those performed by Genco. Rather, it appears that plaintiff's claims against Genco arise from the exact same facts as his claims against Volt.

Nevertheless, the Court acknowledges that Genco's joinder raises distinct legal issues that plaintiff has not yet had the opportunity to address. Plaintiff may file an opposition, no more than ten (10) pages in length by **May 19, 2017**. If plaintiff files an opposition, defendant Genco may file a ten-page reply by **May 26, 2017**. If plaintiff does not file an opposition, the Court shall issue an order regarding Genco's joinder on the current papers.

**V.    CONCLUSION**

For the foregoing reasons, the Court **ORDERS** as follows: The Court **COMPELS** plaintiff to arbitrate his claims against defendant Volt. The Court shall issue an order on Volt's motion to stay or dismiss the action in connection with its order on Genco's joinder.

**IT IS SO ORDERED.**

Dated: May 11, 2017

**YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE**